CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

April 9, 2020

LETTER TO COUNSEL

      RE:    *Brian L. v. Commissioner, Social Security Administration*
               Civil No. DLB-19-197

Dear Counsel:

      The Social Security Administration ("SSA") denied Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 31, 2012. Admin. Rec. 13, 26, ECF No. 8-1 in *Brian L. v. Comm'r*, Civil No. SAG-13-3328. Then, after this Court reversed and remanded the decision of the Administrative Law Judge ("ALJ"), the SSA denied Plaintiff's claims again on September 20, 2018. Tr. 626–61, ECF No. 11-11. Both times, the SSA determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame which, on remand, Plaintiff narrowed by amending the alleged date of onset to June 25, 2010. On January 22, 2019, Plaintiff petitioned this Court to review the SSA's September 20, 2018 Decision and Order. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF Nos. 15, 16.[1] This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA again for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

## Background

      Initially, in response to claims for benefits that Plaintiff filed in June 2010, an ALJ determined that he was not disabled within the meaning of the Social Security Act during the relevant time frame. *See* Mar. 9, 2015 Order 1, ECF No. 31 in *Brian L. v. Comm'r*, Civil No. SAG-13-3328. This Court reversed the ALJ's opinion in part and remanded the case to the Commissioner because "the ALJ provided an inadequate explanation of her consideration of the evidence pertaining to the RFC [residual functional capacity] assessment." *Id.* at 2. The Appeals Council vacated the Commissioner's final decision and remanded the case to an ALJ, in accordance with this Court's March 9, 2015 Order. Tr. 818–22. Plaintiff had filed another SSI application on May 1, 2014, which also was denied and which was consolidated with the remanded case. *Id.* at 626–27.

---

[1] Plaintiff also filed a reply, ECF No. 17, and the Commissioner filed a motion for leave to file a surreply, ECF No. 18, along with a proposed surreply, ECF No. 18-1. Because Plaintiff raised a new argument in his reply, and I have considered that argument, I will grant the Commissioner's motion and accept the surreply as filed. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2018).

On remand, Plaintiff sought benefits based on his alleged inability to work due to his mental health conditions, with a date of onset of June 25, 2010. *Id.* at 628–29, 631, 633. Following a July 27, 2016 hearing and an August 23, 2018 supplemental video hearing, an ALJ concluded again that Plaintiff was not disabled and denied his claims for DIB and SSI in a thirty-six-page decision dated September 20, 2018. Tr. 626–61. Because Plaintiff did not file exceptions to the decision, and the Appeals Council did not review it of its own accord, the decision became a final, reviewable decision of the Agency on November 20, 2018. *See* Tr. 624; 20 C.F.R. §§ 404.984(c), (d), 416.1484(c), (d).

The ALJ evaluated Plaintiff's claims using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since [June 25, 2010]." Tr. 631. At step two, the ALJ found that Plaintiff "has the following severe impairments: "depressive disorder; obsessive-compulsive disorder; panic disorder; passive/aggressive personality disorder; generalized anxiety disorder; bipolar affective disorder; and substance abuse disorder (alcohol, marijuana, cocaine, and Xanax)." *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (the "Listings"). *Id.* at 634. The ALJ reasoned that, to meet the criteria in the Listings, "the mental impairments must result in at least one extreme or two marked limitations," but Plaintiff's impairments were, at most, moderate. *Id.* Specifically, the ALJ found that Plaintiff had a "moderate limitation" in "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." *Id.* The ALJ observed: "The longitudinal mental status examinations show that the claimant overall has adequate memory, concentration, ability to maintain attention, etc. For example, he has scored 30 out of 30 on a mini-mental status examination. His treating psychiatrists have not noted chronic and significant deficits in memory, concentration, etc." *Id.*

Considering those limitations and "the entire record," the ALJ determined that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the work must be routine and repetitive; he can be expected to be off-task 5% of the time; no more than occasional interaction with co-workers and supervisors; no interaction with the general public; no work at exposed heights; no more than occasional work around moving machinery, but there is to be no operation of a motor vehicle; and no working around intoxicants, such as pharmaceuticals and alcohol.

*Id.* at 635. At step four, the ALJ found that this RFC "precludes the performance of the claimant's past relevant work . . . . as actually or generally performed." *Id.* at 659. Finally, at step five, the ALJ relied on the testimony of a vocational expert to find that, despite his limitations, Plaintiff "would be able to perform the requirements of representative occupations such as Cleaner II . . . , Launderer . . . , and Laborer, Stores." *Id.* at 660. Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 25, 2010, the amended, alleged onset date, through the date of this decision." *Id.* at 661.

**Discussion**

Plaintiff raises one argument in his opening brief, contending that "[t]he ALJ erroneously assessed Plaintiff's RFC contrary to Social Security Rule ('SSR') 96-8p (July 2, 1996) by failing to conduct a function-by-function assessment of his ability to perform the physical and mental demands of work" and specifically failing to "explain his finding that Plaintiff 'can be expected to be off task 5% of the time.'" Pl.'s Mot. 10. The Commissioner insists that, while there must be substantial evidence in support of the ALJ's findings, there only needs to be a "minimal level of articulation" of how the ALJ applied made those findings. Def.'s Mot. 7 (quoting *Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir. 1985)). In the Commissioner's view, the ALJ was required to "explain how the evidence supports his findings, and the ALJ did so." *Id.* at 6. I agree with Plaintiff that the analysis, despite its length, does not comply with SSR 96-8p.

The Social Security regulations require an ALJ to include "a narrative discussion of [the] claimant's symptoms and medical source opinions." *Thomas v. Comm'r, Soc. Sec.*, No. SAG-10-1828, 2011 WL 6130605, at *4 (D. Md. Dec. 7, 2011). Additionally, in doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

Here, in a twenty-four page section of the decision dedicated to Plaintiff's mental RFC, the ALJ discussed Plaintiff's history, symptoms, and complaints; opinions from twelve doctors who treated and/or assessed him; GAF scores; and non-medical opinions from three third parties. Tr. 635–59. The ALJ stated that he would "place little reliance on [Plaintiff's] subjective complaints or his subjective health history" because Plaintiff "repeatedly ma[de] inconsistent statement about important facts, [was] evasive, and fail[ed] to cooperate." *Id.* at 638. Also, the ALJ stated that he would give only partial weight to the opinion of Paul A. Gianakon, M.D., Plaintiff's treating psychiatrist, that he had "marked difficulties in maintaining concentration, persistence or pace" and "at no time would he had been capable for even a few months of sustaining meaningful attendance and performance at work," because "the doctor's own, cursory progress notes do not substantially support his opinions." *Id.* at 653. Similarly, "Michael Hammonds, Ph.D., a State Agency psychological consultant, completed a Psychiatric Review Technique Form on November 23, 2010" and "opined that the claimant had . . . moderate difficulties in maintaining concentration, persistence or pace," and the ALJ assigned his opinion only partial weight because "[a] substantial amount of medical evidence was submitted after the doctor gave his opinion." *Id.* at 655. Likewise, Robert Wolf, M.D. opined on July 12, 2010 that Plaintiff had "frequent difficulties in maintaining concentration, persistence or pace," and the ALJ did not accept his opinion because it was "not supported by medical signs and laboratory findings," was "inconsistent with the record as a whole," and was "conclusory, primarily based on the claimant's subjective complaints." *Id.* at 656.

The ALJ gave partial, little, or no weight to the nine other medical opinions in the record, the GAF scores, and the third-party opinions. Tr. 654–59. For example, he gave partial weight to the opinion of Lanning E. Moldauer, Ph.D., who evaluated Plaintiff on October 16, 2015 and opined that he "was able to understand and follow simple instructions independently," *id.* at 654; and partial weight to the opinion of Janis Chester, M.D. who performed a psychiatric consultation on October 26, 2010 and opined that Plaintiff "can follow simple directions but they must be repeated to him," *id.* at 656. The only opinion that Plaintiff "would be able to perform at least simple tasks with on [sic] a sustained

basis" came from E. Edmunds, Ph.D., a State Agency psychological consultant, on April 25, 2011; the ALJ assigned that opinion partial weight. *Id.* at 655.

Certainly, the ALJ may accord partial, little, or no weight to the medical opinions he found to be unsupported or inconsistent with the record as a whole, and "where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Scott v. Colvin*, No. SAG-15-3941, 2016 WL 6585575, at *4 (D. Md. Nov. 7, 2016) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)). The issue is that, after failing to specify any opinion or other evidence to which he assigned any measurable weight, the ALJ then concluded that Plaintiff would be off task 5% of the time. Tr. 635. The ALJ appears to have based his conclusion on his observations that Plaintiff "was attentive and responsive" at the July 27, 2016 hearing and, "[a]t various times since the amended, alleged onset date, he was able to drive a motor vehicle." *Id.* at 646, 649. The ALJ found that his behavior at the hearing and "ability to drive" both demonstrated "concentration and persistence." *Id.* The ALJ did not explain how engagement at a hearing or the ability to drive—two events of unknown duration—supported his finding that Plaintiff could maintain concentration to stay on task for 95% of a workday. Despite discussing the record at length, the ALJ did not provide any other support for his finding that Plaintiff could stay on task for 95% of the workday. The ALJ's vague references to the "longitudinal medical records" as support for his conclusion do not suffice. *E.g.*, *id.* at 649–50 ("If the claimant were as truly as [sic] symptomatic as alleged to the Social Security Administration and at the hearings, I would expect for more aggressive treatment than what is contained in this record, including closer monitoring by his psychiatrist, perhaps inpatient care, etc. I therefore relied far more on the longitudinal evidence rather than the claimant's subjective complaints in making the above residual functional capacity finding."). Notably, the record reflects Plaintiff's appointments with his treating psychiatrist every three months for 14–19 minutes, as well as less frequent meetings with other medical providers, perhaps for longer periods. Other than a cursory conclusion that Plaintiff had no problems with concentration, persistence, or pace because he did not complain of any, the ALJ did not identify any evidence in the record to support the RFC finding. Without additional information about the basis for the ALJ's opinion, I cannot evaluate his rationale. Thus, notwithstanding the length and detail of the ALJ's narrative discussion, that discussion does not enable me to ascertain the specific factual support for the ALJ's determination that Plaintiff would be off task 5% of the time.

As Plaintiff notes, the ALJ failed to provide "an accurate and logical bridge" between the evidence he discussed, his finding that Plaintiff had a "moderate limitation" in "concentrating, persisting, or maintaining pace," Tr. 634, and his RFC determination that Plaintiff would be off task 5% of the time. Stated differently, the ALJ did not explain how the medical opinions to which he gave partial weight, along with his observations regarding Plaintiff's attentiveness at the hearing and ability to drive, translated into a determination that Plaintiff could stay on task for at least 95% of an eight-hour workday. An explanation of how that percentage was calculated is significant, since a six percent increase could preclude competitive employment. *See* Tr. 784, ECF No. 11-11 (vocational expert's opinion that 10% of time off task would preclude work); *Schlossnagle v. Colvin*, No. TMD-15-935, 2016 WL 4077672, at *4 (D. Md. Aug. 1, 2016) (noting that vocational expert testified that "being 'off task' more than 10% of the time during an eight-hour workday would preclude all competitive employment" in fields of cleaner, hand packer, and warehouse laborer). Nor did he reconcile his finding that Plaintiff had a moderate limitation in maintaining concentration, persistence, or pace with

his determination that Plaintiff would be off task 5% of the time. *See Williams v. Berryhill*, Civil No. TMD-17-1083, 2018 WL 3092273, at *6 (D. Md. June 22, 2018) (concluding that "the inadequacy of the ALJ's analysis frustrate[d] meaningful review" where the ALJ "failed to explain how, despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, he could remain on task for at least 90% of an eight-hour workday"). Significantly, "[c]ase law suggests that a mild deficit in concentration, persistence, or pace is tantamount to a 10% deficit," which means that a moderate limitation is inconsistent with only being off-task 5% of the time. *See Free v. Colvin*, No. TMD-15-1359, 2016 WL 5661651, at *6 (D. Md. Sept. 30, 2016).[2] Accordingly, without further explanation, I am unable to ascertain how the ALJ assessed Plaintiff's mental limitations in completing the RFC assessment. *See id.*; *Williams*, 2018 WL 3092273, at *6. In light of this inadequacy, I must remand the case to the Commissioner for further analysis. On remand, the ALJ should consider the impact of Plaintiff's limitations on the RFC determination, and explain the reasons for that finding, citing substantial evidence. In remanding, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct or incorrect.

*Mascio* Argument

In his reply, Plaintiff argues that the ALJ ran afoul of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). Pl.'s Reply 6. In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of the plaintiff's "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. Specifically, absent an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, remand was necessary. *Id.* I agree that the ALJ's analysis did not comply with *Mascio* and that the ALJ's decision with respect to Plaintiff's ability to concentrate, persist, and maintain pace requires additional explanation.

The ALJ must employ a "special technique" to "rate the degree" of the claimant's "functional limitation" in four functional areas, "based on the extent to which [the claimant's] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(b), (c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation as none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c).

---

[2] The Commissioner contends that, even if the analysis were inadequate, Plaintiff has "failed to demonstrate that he has suffered harm" from the finding that he could be expected to be off task 5% of the time, because "[h]e has not demonstrated that the evidence establishes a need for any additional limitation in the RFC, and the vocational expert who testified at the most recent hearing opined that even a figure *twice* as high would be tolerated." Def.'s Mot. 11 n.3; *see also* Def.'s Surreply 2 (noting that a worker could be off task up to 10% of the time in the identified occupations and, generally, work breaks account for 5% of the workday). In light of the case law suggesting that, without further explanation, a moderate limitation in concentration, persistence, or pace should translate to being off task more than 10% of the workday, and the vocational expert's testimony that being off task for 10% of the workday could preclude competitive employment, Plaintiff persuasively has alleged harm from the ALJ's finding. *See* Pl.'s Mot. 13; *Williams*, 2018 WL 3092273, at *6; *Free*, 2016 WL 5661651, at *6.

One functional area is the area of concentration, persistence, or pace, which "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3). The ALJ concluded that Plaintiff has a moderate limitation, but he did not analyze his ability to concentrate, persist, or maintain pace specifically. Rather, he grouped this area with the functional area of understanding, remembering, and applying information. Nor did he give any reason for his finding. This deficient analysis could have been cured if, elsewhere in the AJL decision, there were sufficient findings for the Court to draw this conclusion. But, as discussed, the ALJ's cursory observations throughout his decision do not, when taken together, provide a sufficient analysis for the Court to understand the ALJ's reasoning.

Further, as discussed, despite his finding of moderate difficulties maintaining concentration, persistence, or pace, the ALJ only found that Plaintiff would be off task 5% of the time. He did not explain why that limitation was sufficient, given the inconsistencies discussed above. Nor did he include any other limitation in the RFC to address the finding of moderate difficulties or "explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, No. ELH-14-2214 (SAG), 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."), *report & recc. adopted* (D. Md. June 5, 2015). To the extent that the Commissioner argues that "the 5% figure is encompassed by the typical breaks present in the work environment," Def.'s Mot. 11 n.3, if the time off task is accommodated by normal breaks, that is not an RFC limitation at all. The breaks encompassed within a normal workday are not specific limitations designed to address Plaintiff's particular concentration, persistence, or pace issues. *See* SSR 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) (noting that occupational base is not eroded by normal workday breaks of morning break, lunch period, and afternoon break at approximately two-hour intervals). A statement asserting a lack of limitation, without an accompanying explanation, does not satisfy the *Mascio* requirement. For these reasons, also, a remand is required. *See Mascio*, 780 F.3d at 638.

## Conclusion

For the reasons set forth herein, Defendant's Motion for Leave to File a Surreply, ECF No. 18 is GRANTED, and the proposed surreply, ECF No. 18-1, is ACCEPTED as filed; Plaintiff's Motion for Summary Judgment, ECF No. 15 is DENIED; and Defendant's Motion for Summary Judgment, ECF No. 16, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge